UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| DAVID LUEVANO § | |
|     Plaintiff, § | |
| § | |
| v. § | |
| § | No. EP-19-CV-00133-LS |
| ANDREW M. SAUL, § | |
| COMMISSIONER OF § | |
| SOCIAL SECURITY, § | |
|     Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff David Luevano appeals the denial of his application for disability insurance benefits under 42 U.S.C. § 405(g). The parties consent to my determination of the case under 28 U.S.C. § 636(c) and Appendix C of the Local Court Rules for the Western District of Texas. I **AFFIRM** the Commissioner's decision denying benefits.

**I.     Facts and Proceedings**

Luevano alleges he became disabled on January 30, 2014[1] because of cervical neck pain, concussions, hypertension, and depression.[2] An Administrative Law Judge ("ALJ") held a hearing on March 7, 2018 and heard testimony from Luevano, who was represented by counsel, and a vocational expert ("VE").[3] In an opinion dated May 1, 2018, the ALJ determined that Luevano was not disabled within the meaning of the Social Security Act.[4] The Appeals Council denied his request for review on March 14, 2019, making the decision of the ALJ the final decision of the

---

[1] R:493.
[2] R:382.
[3] R:354-81.
[4] R:102-15.

Commissioner.[5] Luevano argues in this appeal that the ALJ insufficiently addressed and underrated his spine problems and overrated his ability to work.

## II. Discussion

### A. Legal Standards

Judicial review of the Commissioner's decision is limited to two inquiries: 1) whether the decision is supported by substantial evidence on the record as a whole; and 2) whether the Commissioner applied the proper legal standards.[6] Substantial evidence "is more than a mere scintilla, and less than a preponderance."[7] The Commissioner's findings will be upheld if supported by substantial evidence,[8] and "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision."[9] In evaluating a disability claim, the Commissioner must follow a five-step sequential process to determine whether: (1) the claimant is presently working; (2) the claimant has a severe medically determinable physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in the appendix to the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant can perform other relevant work.[10]

Courts utilize four factors to determine whether there is substantial evidence of disability: (1) objective medical evidence; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's

---

[5] R:1-5.
[6] *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)).
[7] *Hill v. Berryhill*, 718 F. App'x 250, 253-54 (5th Cir. 2018) (quoting *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th 2002)).
[8] *Masterson*, 309 F.3d at 272 (citing *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995)).
[9] *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)).
[10] 20 C.F.R. § 404.1520(a)(4); *Boyd*, 239 F.3d at 704-05.

age, education, and work history.[11] A court cannot, however, reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision.[12] The Commissioner, not the courts, resolves conflicts in the evidence.[13]

### B.     Residual Functional Capacity

Residual functional capacity, or RFC, is the most an individual can still do despite his or her limitations.[14] The responsibility to determine a claimant's RFC belongs to the ALJ.[15] The ALJ must consider a claimant's abilities despite his or her physical and mental limitations based on the relevant evidence in the record.[16] The ALJ must consider the limiting effects of an individual's impairments, even those that are non-severe, and any related symptoms.[17] An RFC finding is used to determine if the claimant can still do his past jobs.[18] If he cannot, the RFC is then used to determine whether he can do other jobs in the national economy.[19]

### C.     The ALJ's Findings

In this case, the ALJ found that Luevano's severe impairments were "cervical disc disease, unspecified and lumbar disc disease with radiculopathy; obesity; major depressive disorder/bipolar disorder; and post-traumatic stress disorder."[20] They were not, however, individually or in combination severe enough to meet or equal an impairment listed in the appendix to the

---

[11] *Perez*, 415 F.3d at 462.
[12] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).
[13] *Id*.
[14] 20 C.F.R. § 404.1545(a)(1).
[15] *Id*. at § 404.1546(c); *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).
[16] 20 C.F.R. § 404.1545(a)(1); *Perez*, 415 F.3d at 461-62.
[17] *See* 20 C.F.R. §§ 404.1529(d)(4), 404.1545(a)(2).
[18] *Perez*, 415 F.3d at 462; 20 C.F.R. § 404.1520(e).
[19] *Id*.
[20] R:105.

regulations.[21] The ALJ found that Luevano could still perform "light work" with certain limitations,[22] and that even with these limitations there are jobs in the national economy that Luevano can still do.[23] Accordingly, the ALJ found Luevano not disabled and not entitled to disability insurance benefits.[24]

### D. Disability at step 3 because of spine problems

A claimant is deemed disabled and awarded benefits at step three of the disability analysis if he has an impairment as severe as an impairment listed in Appendix 1 of the regulations.[25] Luevano argues that the ALJ insufficiently addressed and underrated his spine problems, which are severe enough to deem him disabled at step three. Relying on *Audler v. Astrue*, he argues that the ALJ erred because he "engaged in *no discussion* regarding the extent of Plaintiff's spinal impairments"[26] at step three. In *Audler*, the Fifth Circuit vacated and remanded an ALJ's decision because she "fail[ed] to state *any reason* for her adverse determination at step 3" and "offered nothing to support her conclusion at this step."[27]

That's not what happened in this case. The ALJ's ten-paragraph step-three analysis addressed Luevano's spinal, mental, and obesity-related impairments,[28] and the record belies Luevano's argument that the ALJ "engaged in *no discussion*" about Luevano's spine problems at step three:

---

[21] *Id*.
[22] R:107-113. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).
[23] R:113-14.
[24] R:114.
[25] 20 C.F.R. § 404.1520(a)(4)(iii); *Boyd*, 239 F.3d at 705.
[26] ECF No. 20, at 13 (emphasis added).
[27] *Audler v. Astrue*, 501 F.3d 446, 448-49 (5th Cir. 2007) (emphasis added).
[28] R:105-06.

> Listing 1.04 was considered for the claimant's cervical and lumbar disc disease. The objective evidence does not establish the requisite findings of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis. Nor does it document the corresponding motor and sensory or reflex deficit. Positive straight leg raising, both sitting and supine, is not present on examination in connection with his lumbar disc disease. Moreover, there is no evidence that the claimant's back disorder has resulted in an inability to ambulate effectively, as defined in 1.00(B)(2)(b).[29]

Appendix 1's "Listing 1.04(A)" explains what spinal impairments based on nerve root compression are severe enough for an automatic disability finding at step three:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).[30]

Luevano argues that his spinal impairments meet Listing 1.04(A) because he "has nerve root compression characterized by neuro-anatomic distribution of pain, limited range of motion, muscle weakness, and sensory loss."[31] He explains that his disability began when he was involved in a motor vehicle accident on January 14, 2014,[32] but relies in this appeal on a 2013 MRI,[33] done months *before* the accident, which does not explicitly diagnose nerve root compression. I also note that the treating physician who ordered, utilized, and discussed this MRI with Luevano gleaned "no spinal cord compression" and recorded nothing about nerve root compression.[34] Finally, I note

---

[29] R:105.
[30] 20 C.F.R. Pt. 404, Subpart P, App. 1, § 1.04(A) (parentheticals in original).
[31] ECF No. 20, at 13.
[32] R:374 (Prior to the…accident in 2014, I was very strong, you know, hardworking, providing for my family, and very responsible person."); R:1536 (2015 neurologist record indicating "Mr. Luevano began with the history of the present illness sometime in January 2014 when he had a motor vehicle accident.").
[33] ECF No. 20, at 13 (citing May 2013 MRI at R:669).
[34] R:663.

that this 2013 MRI was done while Luevano was still working full time as a truck driver,[35] which "certainly calls into question the severity of the impairment."[36] Luevano also relies[37] on a post-accident March 2016 MRI,[38] but it too fails to explicitly diagnose nerve root compression.

Even if the ALJ had found the requisite nerve root compression, he nevertheless found that Luevano didn't have "the corresponding motor and sensory or reflex deficit" that Listing 1.04(A) requires.[39] The medical records that the ALJ reviewed and discussed show that Luevano had "no motor strength deficits, atrophy or abnormal gait" in June 2015.[40] The ALJ gleaned "normal neurological findings"[41] from a July 2015 neurologist's exam, and noted this same neurologist recorded that Luevano had no neurological deficits and was "doing well" in August 2015.[42] The October 2015 exam on which Luevano now relies[43] actually shows that his "[n]eurological examination was normal with regard to strength and sensation,"[44] his "[m]anual muscle strength was normal with no measurable atrophy,"[45] and his cervical spine range of motion was completely normal except for a marginal decrease with respect to rotation both right and left.[46]

A court will affirm a finding of no disability at step three for want of nerve root compression when there is no "direct evidence of nerve root compression contained in the

---

[35] Luevano was working as a truck driver at a substantial gainful activity ("SGA") level in 2013. (R:361, 504).
[36] *See Singletary v. Bowen*, 798 F.2d 818, 821 (5th Cir. 1986).
[37] ECF No. 20, at 13-14.
[38] R:1513.
[39] R:105.
[40] R:109 (citing R:677-78).
[41] *Id*. (citing R:1494 ("Motor examination: Appears to have good strength, bulk and tone in all extremities. Reflexes are brisk, symmetrical, no pathological reflexes. The rest of the exam is unremarkable.")).
[42] *Id*. (citing R:1702).
[43] ECF No. 20, at 14 (relying on Dr. Doores' examination).
[44] R:879.
[45] *Id*.
[46] R:876.

record."[47] The ALJ in this case reviewed Luevano's entire medical record,[48] referenced the 2013[49] and 2016[50] MRI's in his decision, and concluded that the "objective evidence does not establish the requisite findings of nerve root compression."[51] He also reviewed and discussed the medical evidence establishing that Luevano didn't have "the corresponding motor and sensory or reflex deficit" that Listing 1.04(A) requires.[52] Courts do not reweigh the medical evidence in the record or substitute their judgment for the Commissioner's.[53] Given the ALJ's record review and analysis in this case, I cannot say that "no credible evidentiary choices or medical findings support the [ALJ's] decision."[54] Accordingly, substantial evidence supports the ALJ's determination and I find no error at step three.

### E. RFC Error.

Luevano also claims that the ALJ erred in generating his RFC. The ALJ determined that Luevano could do light work, with the following limitations:

> occasional overhead reaching with dominant right upper extremity; and, no interaction with the general public and occasional interaction with supervisors and coworkers; and, he retains the ability to understand, remember, and carry out simple job instructions and work-related tasks.[55]

Luevano's main argument is that the ALJ gave too little weight to consulting psychologist Dr. Rattan's July 2016 opinion that Luevano "would have significant difficulty maintaining

---

[47] *See Whitehead v. Colvin*, 820 F.3d 776, 782 (5th Cir. 2016) (citing *Zimmerman v. Astrue*, 288 F. App'x 931, 937 (5th Cir. 2008) (affirming Commissioner's conclusion that plaintiff's impairment did not meet or equal Listing 1.04 where there was no direct indication of nerve root compression.)).
[48] R:104.
[49] R:109 (citing the 2013 MRI as "Ex. 2F12.").
[50] R:110 (citing the 2016 MRI as "Ex. 5F20.").
[51] R:105.
[52] *Id*.
[53] *Newton*, 209 F.3d at 452.
[54] *Boyd*, 239 F.3d at 704.
[55] R:107.

consistent employment from a mental health standpoint."[56] The ALJ gave this opinion little weight because it was based a single examination, relied on Luevano's own subjective descriptions of his psychological symptoms, and contradicted "other objective evidence of record [that] does not document sustained abnormal findings of mood, memory or concentration."[57]

During an appointment in August 2016, one month *after* Dr. Rattan's examination, Luevano reported he had never received mental health treatment before and was observed to have clear, logical, and goal oriented thought processes, and good judgment and insight.[58] In September 2016, Luevano was "doing well on current medication," his mood was stable, and he had no appetite or sleeping problems.[59] He was cooperative, spoke clearly with coherent thought processes, and his cognition, intellectual functioning, knowledge base, and recent and remote memory were all normal.[60] The ALJ noted that November 2016 medical records show Luevano's mood was stable and he continued to do well on medication,[61] although I note the same records show that Luevano's mood and depression varied between December 2016 and March 2017 based on family problems and whether his wife was in town.[62] The ALJ did note, however, that Luevano's primary care provider's records reflect normal mental exam findings in November 2016,[63] March 2017,[64] and July 2017.[65]

---

[56] R:110 (citing R:1642).
[57] *Id*.
[58] R:111 (citing R:1654).
[59] R:2074.
[60] R:1656-57. I do note that Luevano's immediate memory was rated as "forgetful."
[61] R:111 (citing R:2074).
[62] R:2074.
[63] R:111 (citing R:1713, 1719, 1723).
[64] *Id*. (citing R:2018).
[65] *Id*. (citing R:2001, 2005).

Finally, the ALJ also noted that "other clinicians have opined [Luevano] remains capable of sustaining the mental demands of less demanding work."[66] For example, state agency medical consultants Matthew Wong, Ph.D., and Joel Forgus, Ph.D., both reviewed Luevano's medical records and found that Luevano could "understand, remember and carry out only simple instructions, make simple decisions, attend and concentrate for extended periods, interact adequately with co-workers and supervisors, and respond appropriately to changes in routine work settings."[67] I also note that both consultants rendered their opinions after Dr. Rattan's.[68]

Luevano argues that the opinions of non-examining physicians Drs. Wong and Forgus cannot constitute substantial evidence because they contradict examining physician Dr. Rattan's medical opinion.[69] Dr. Rattan's opinion, however, is not a "medical opinion." "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions."[70] Dr. Rattan's opinion that Luevano "would have significant difficulty maintaining consistent employment from a mental health standpoint"[71] is an opinion on disability, which is an issue within the Commissioner's sole province.[72]

Luevano is correct that non-examining physicians' reports do not provide substantial evidence when they constitute the sole medical evidence or contradict an examining physician's

---

[66] R:110.
[67] R: 392, 410.
[68] Dr. Wong's and Dr. Forgus' opinions are dated August 17, 2016 (R:392) and January 27, 2017 (R:410), respectively.
[69] ECF No. 20, at 17.
[70] 20 C.F.R. § 404.1527(a)(1). This definition applies because Luevano filed his claim before March 27, 2017.
[71] R:1642.
[72] 20 C.F.R. § 404.1527(d)(1).

"specific medical conclusions."[73] In this case, Dr. Rattan's report was not a medical conclusion, but the ALJ nevertheless explained in detail his reasons for discounting it. The ALJ also reviewed and relied on Luevano's entire medical record and explained the opinions of Drs. Wong and Forgus. I find no error regarding the ALJ's use and treatment of the opinions of Drs. Rattan, Wong, and Forgus in generating Luevano's mental RFC.[74]

Luevano's last argument is that the ALJ committed RFC error because he "failed to weigh or even mention the opinion of Plaintiff's treating chiropractor Dr. Ponce."[75] The record Luevano cites is actually a January 2015 insurance form with boxes and numbers that Dr. Ponce checked or circled,[76] which the ALJ noted was submitted as part of Luevano's worker's compensation claim.[77] The restrictions that Dr. Ponce recorded, even if credited, don't altogether impugn the physical RFC the ALJ ultimately determined. Indeed, the ALJ incorporated into the RFC Dr. Ponce's observation about Luevano's difficulty reaching overhead with his right arm. In any event, later records show that whatever standing, walking, sitting, lifting, and right hand use limitations Dr. Ponce observed in January 2015 eventually improved. The ALJ found that the July 2015, August 2015, and October 2015 medical records discussed above reflect normal findings with respect to muscle strength, atrophy, gait, and spinal range of motion. Finally, the ALJ was not required to

---

[73] *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).
[74] Luevano alleges the ALJ rejected nurse practioner Curkeet's opinion, but doesn't brief or explain any error in this regard. (ECF No. 20, at 15-17). Luevano makes clear in his reply that his mental RFC argument relies only on Dr. Rattan's opinion. (ECF No. 22, at 3).
[75] ECF No. 20, at 17.
[76] R:956.
[77] R:109 ("[Luevano]…received conservative pain management care for cervical and lumbar disc disease in connection with his resulting worker's compensation claim.")

rely on Dr. Ponce's opinion because a chiropractor "is not an acceptable medical source."[78] The ALJ committed no reversible error with respect to Dr. Ponce's opinion.

The ALJ properly considered all the medical evidence in this case, and substantial evidence supports his decision. I find no legal error, and the decision of the Commissioner is **AFFIRMED.**

**SIGNED and ENTERED** on May 18, 2020.

**LEON SCHYDLOWER**
**UNITED STATES MAGISTRATE JUDGE**

---

[78] *See Porter v Barnhart*, 200 F. App'x 317, 319 (5th Cir. 2006) ("At the outset, the ALJ was not required to rely on the chiropractor's evaluation in making the RFC finding because a chiropractor is not an acceptable medical source.").